ELECTRIC STORAGE BATTERY COMPANY, Appellant, v. BLACK, Respondent.

*March 31—April 27, 1965.*

368

For the appellant there was a brief by *Winter & Winter* of Antigo, and oral argument by *Richard T. Winter*.

For the respondent there was a brief by *Charles B. Avery* of Antigo, attorney, and *Schmitt, Wurster, Tinglum & Nolan* of Merrill of counsel, and oral argument by *Sverre Tinglum*.

GORDON, J.

### Consideration.

The respondent's letter of July 30, 1960, was sufficient to meet the requirements of sec. 241.02 (2), Stats. When Mr. Milo Black prefaced his guaranty with the words, "In regard to credit rating for Gerald Black, . . ." he adequately expressed the consideration necessary to take the case from the statute of frauds, since it is clear from the record that the guaranty did not relate only to a past purchase. *Miami County Nat. Bank v. Goldberg* (1907), 133 Wis. 175, 113 N. W. 391; *Waldheim v. Miller* (1897), 97 Wis. 300, 72 N. W. 869; *Young v. Brown* (1881), 53 Wis. 333, 10 N. W. 394; *Dahlman v. Hammel* (1878), 45 Wis. 466; *Williams v. Ketchum* (1865), 19 Wis. 247 (*231).

In *Eastman v. Bennett* (1857), 6 Wis. 228 (*232), 239 (*242), we quoted with approval the view that "there is a wide difference between the guaranty of an existing debt and the guaranty of a debt to be contracted upon the credit of guaranty." The court went on to state:

"It appears from the correspondence between the parties that the plaintiffs agreed to sell the goods to Clark upon credit, on condition that the defendant would guaranty the debt. The goods were really sold upon the faith and credit of this contract of guaranty, and the consideration appearing upon the face of the letter is sufficient to support the contract."

### Notice of Acceptance.

All courts agree that if the contract of guaranty affirmatively calls for notice, it is a condition which must be met in order to bind the guarantor on his promise. Mr. Milo Black's letter of guaranty, dated July 30, 1960, does not expressly cover the question whether he expected to be notified by the creditor that the latter accepted the guaranty and intended to make deliveries of merchandise in reliance thereon. Courts have not been uniform in their decisions on the issue whether notice of intention to accept such a guaranty is necessary in order to hold the guarantor liable.

Some courts have held that if there is any fair reason for the guarantor to be uncertain that the creditor will accept the proposed guaranty, a notice of the intention to accept is a constructive condition to the liability of the guarantor. *Ladd & Bush v. Hayes* (9th Cir. 1939), 105 Fed. (2d) 292; *Davis Sewing Machine Co. v. Richards* (1885), 115 U. S. 524, 6 Sup. Ct. 173, 29 L. Ed. 480; *Black, Starr & Frost v. Grabow* (1914), 216 Mass. 516, 104 N. E. 346.

In Restatement, 1 Contracts, p. 64, sec. 56, appears the following illustration:

"1. A writes to B: 'Let C have $100 and I guarantee its repayment.' Immediately on receiving this communication, B lets C have $100 but fails to notify A of the fact, although he knows that A is not otherwise likely to learn of it. B cannot enforce the guaranty if C fails to pay the debt."

The decisions of the state of Wisconsin demonstrate that notice of acceptance to the guarantor is ordinarily required. In *A. B. Kuhlman Co. v. Cave* (1908), 135 Wis. 279, 115 N. W. 793, the guarantor wrote a letter to the creditor which contained the following:

"I request that should Mr. Leon H. Cave . . . order goods from you at any time after date of this letter of credit

until further notice, that you ship same to order of said agent, and I hereby guarantee payment for the same within twenty days after the arrival of the goods at destination."

The trial court rendered judgment in favor of the creditor against the guarantor, and the supreme court reversed, with the following holding, at page 280:

"It is plain that this judgment was erroneous. The writing sued on was simply a letter of credit and constituted an offer merely on the part of the defendant, which would not become a contract until accepted and notice of acceptance given to the guarantor. This has been so recently held by this court that no extended discussion of the principle is either desirable or necessary. *Miami Co. Nat. Bank v. Goldberg,* 133 Wis. 175, 113 N. W. 391. See, also, *New Home S. M. Co. v. Simon,* 104 Wis. 120, 80 N. W. 71. No acceptance or notice of acceptance was found by the court; hence no completed contract of guaranty was made and no liability incurred."

It will be observed that in the *Kuhlman Case* the court relied on *Miami County Nat. Bank v. Goldberg* (1907), 133 Wis. 175, 113 N. W. 391, which had been decided only five months earlier. In that case, the defendant wrote the following letter to the creditor (p. 177):

"Gentlemen: You kindly let L. D. Goldberg, my son, manager for the Goldberg Live Stock Company, make overdrafts in your bank to the amount of $800 to buy live stock with. He has no doubt explained to you that he has always to wait for returns on stock which is all right. Hope you will accommodate him and also me."

This court found that the document, standing alone, was only an offer to guarantee advances; it did not become binding until it was accepted and notice thereof given to the guarantor. At page 180 of the *Miami County Nat. Bank Case,* the court cited *Acme Mfg. Co. v. Reed* (1900), 197 Pa. St. 359, 47 Atl. 205, for the policy behind this rule:

"A guarantor of future credit or advancing is entitled to notice from the party giving the credit of his acceptance of the guaranty, inasmuch as such notice enables the guarantor to know the nature and extent of his liability, to exercise due diligence in guarding himself against losses which might otherwise be unknown to him, and to avail himself of the appropriate means in law and equity to compel the other parties to discharge him from future responsibility. . . . The corporation accepted and filled the order, but gave no notice of the acceptance to the guarantor. *Held,* that the guarantor was not liable."

See also *McNaughton v. Conklings* (1859), 9 Wis. 289 (*316).

This rule followed in Wisconsin and in a number of other states has been questioned and circumscribed. When the guaranty contract is executed contemporaneously with the signing of the primary contract, it would be unsound to require formal notice. In addition, the guarantor may, by his conduct, waive the necessity of notice of acceptance.

The plaintiff has referred the court to several cases which hold that notice of acceptance is not necessary when the guaranties are continuing in nature, as they are considered to be offers which become effective as soon as they are relied on by the creditor. *Klatte v. Franklin State Bank* (1933), 211 Wis. 613, 248 N. W. 158, 249 N. W. 72; *Chicago Lock Co. v. Kirchner* (1929), 199 Wis. 30, 225 N. W. 185; *International Textbook Co. v. Mabbott* (1915), 159 Wis. 423, 150 N. W. 429. However, in each of the foregoing cases (unlike the case at bar) the giving of the guaranty was contemporaneous with the execution of the primary contract; under such circumstances, notice of acceptance would indeed be a formality.

Also, these cases can be distinguished on other grounds. In the *International Textbook Co. Case, supra,* the court points out, at page 427, that the guarantor expressly waived

any notice of acceptance of the guaranty. In the *Chicago Lock Co. Case, supra,* the guarantor claimed he never received a formal notice of acceptance, but the court observed that the guarantor had actual knowledge of it from another source. In the *Klatte Case, supra,* the issue now being considered was not before the court. The main issue there involved the legal effect of a notice by a surety that he intended to terminate his future liability on the contract.

In his treatise on contracts (1 Corbin, Contracts, p. 283, sec. 68), Professor Corbin states:

"It is beyond question that in many thousands of cases an offer to become guarantor for another has been made in such terms as to induce the offeree to advance money, goods, or services on credit without first sending any notice of acceptance to the offeror. Later, when demand is made for him to pay the debt of another in accordance with this promise, the guarantor complains of this lack of notice and asserts that his offer was not accepted as the law requires."

In 62 Michigan Law Review (1963), 57, there is a comprehensive discussion of Notice Requirements of Guaranty Contracts, by Richard F. Dole, Jr. The cases on all sides of the dispute are analyzed in this article.

Restatement, Security (1941), p. 248, sec. 86, asserts the following rule:

"Where the surety offers to guarantee an extension of credit to the principal and the credit is extended as the sole consideration for the surety's promise, the contract is complete upon the extension of credit, but if the surety does not know of the extension of credit and has no adequate means of ascertaining with reasonable promptness and certainty that the credit has been extended and the creditor should know this, the contract of the surety is discharged unless within a reasonable time after the extension of credit the creditor exercises reasonable diligence to notify the surety thereof."

The effect of the Restatement rule is to obviate the need of notice to the surety except in those cases wherein he is either unaware of the extension of credit or does not have adequate means to learn of it; under the *Kuhlman Case* and other decisions of this state, the emphasis is somewhat different: The guarantor is entitled to notice of acceptance unless there exists some special circumstance excusing it. There may even be contracts of guaranty which, by their special terms or particular circumstances, will require not only an original notice of acceptance but additional notices of acceptance as to subsequent sales or shipments.

The instant case was submitted upon stipulated facts. There is nothing in such facts or in the documentary exhibits that were received in evidence which would relieve the creditor of its responsibility to give notice of acceptance of Mr. Milo Black's offer to guarantee payment for material purchased by his son. The plaintiff urges that when Mr. Milo Black responded (in Exhibit 5) to the creditor's letter of May 7, 1962, he acknowledged, in effect, that he had never expected to receive notice of acceptance at the time he wrote the original letter. We are unable to derive such meaning from Exhibit 5. Therein Mr. Milo Black wrote:

"I guaranteed his first shipment but that was nearly two years ago.

"I would suggest your reducing your account to your cost and giving him a long term settlement. His intentions are good if given a chance."

In our opinion, the foregoing language neither demands nor waives acceptance in any degree greater than the original letter of July 30, 1960. Under the authority of *A. B. Kuhlman Co. v. Cave, supra,* we conclude that Mr. Milo Black was entitled to notice of acceptance, and, in the absence of such notice, he cannot be held liable on the contract.

### Notice of Default.

In addition to a notice of acceptance of his offer, a guarantor may also be entitled to notice of a default on the part of the principal debtor. If the time within which a guaranty operates is fixed and if the total amount of the obligation is known, it has been held to be unnecessary to give a notice of default. *Estate of Bitker* (1947), 251 Wis. 538, 544, 30 N. W. (2d) 449; *Farmers State Bank v. Hansen* (1921), 174 Wis. 100, 182 N. W. 944; *Welch v. Walsh* (1901), 177 Mass. 555, 59 N. E. 440.

On the other hand, one who has given an unlimited or open-ended guaranty is entitled to a notice of default within a reasonable time after the default occurs. *Douglass v. Reynolds, Byrne & Co.* (1833), 32 U. S. 113 (7 Pet.), 8 L. Ed. 626; *Taussig v. Reid* (1893), 145 Ill. 488, 30 N. E. 1032; *Cahuzac & Co. v. Samini* (1856), 29 Ala. 288; *Rankin & Rankin v. Childs* (1846), 9 Mo. 665. See 62 Michigan Law Review (1963), 57, 92–97.

Mr. Milo Black's letter of guaranty did not expressly limit the time or the amount. The first shipment to Mr. Gerald Black was dated August 29, 1960, and the last shipment February 2, 1962. On October 19, 1961, Mr. Gerald Black had reduced the balance due to his creditor to $32.14. From then until February, 1962, when Mr. Gerald Black went out of business, he appears to have been continuously in arrears, the final balance being $5,193.10. The first notice of any kind given by the plaintiff to Mr. Milo Black was dated April 18, 1962; then for the first time the plaintiff notified the guarantor of the default.

Although Mr. Milo Black contended in his letter (Exhibit 5) that he had limited his obligation to the "first shipment," we interpret his original letter of July 30, 1960, as exposing

himself to an open-ended obligation. There was only a small default in October, 1961, but it grew to a substantial default of over $5,000 in February, 1962. Since notice of default was not given until April, 1962, it would appear that there had been a delay of at least six months from the time of the first default until the notice thereof.

Because the relationship of the guarantor and the principal debtor was that of father and son, we have carefully examined the record to determine if it discloses a date when Mr. Milo Black may have received actual notice of his son's default in payments. We are unable to determine any such date of actual notice from this record. Cf. *Mamerow v. National Lead Co.* (1903), 206 Ill. 626, 69 N. E. 504.

Restatement, Security (1941), p. 368, sec. 136, asserts the following rule:

"Subject to the rules pertaining to negotiable instruments, the surety's obligation to the creditor is not affected by the creditor's failure to notify him of the principal's default unless such notification is required by the terms of the surety's contract."

If this rule is applicable, Mr. Milo Black would not have been entitled to notice of default. Restatement, Security (1941), p. 369, sec. 137, further provides:

"Where a surety has guaranteed the collectibility of a principal's debt, the creditor has the duty of giving the surety reasonable notice of his inability to enforce performance, and if such notice is not given, the surety is discharged to the extent of resulting prejudice."

Under this rule, there would have to be proof that the delay in giving notice impeded Mr. Milo Black in his ability to obtain reimbursement from his son, the principal debtor. The record is devoid of such proof.

The present cause of action arose prior to the new Uniform Commercial Code, and it has not been contended that

its provisions are applicable. However, we note that sec. 3–416 (5) (sec. 403.416 (5), Stats.) provides:

"When words of guaranty are used presentment, notice of dishonor and protest are not necessary to charge the user."

Our attention has not been called to any Wisconsin case which holds that the failure to give seasonable notice of default to a guarantor is fatal to a creditor's claim. Not being previously committed to any rule of commercial practice to the contrary, we deem the Restatement rules to represent a more-sound choice of law than that urged by the respondent.

## *Conclusion.*

We conclude that Mr. Milo Black was entitled to receive from the plaintiff notice of acceptance of his guaranty contract and, since such notice was not given, the guarantor cannot be held liable.

*By the Court.*—Judgment affirmed.